George SASSOWER, Plaintiff,

v.

ABRAMS, et al., Defendants.

George SASSOWER, Plaintiff,

v.

MEAD DATA CENTRAL, INC., et al., Defendants.

George SASSOWER, Plaintiff,

v.

FELTMAN, et al., Defendants.

George SASSOWER, Plaintiff,

v.

McFADDEN, et al., Defendants.

George SASSOWER, Plaintiff,

v.

BRIEANT, et al., Defendants.

Nos. 92 Civ. 8515 (PKL), 92 Civ. 9220 (PKL), 92 Civ. 9221 (PKL), 93 Civ. 342 (PKL), 93 Civ. 343 (PKL).

United States District Court, S.D. New York.

Sept. 8, 1993.

George Sassower, pro se.

Mary Jo White, U.S. Atty., for the S.D.N.Y., New York City, G. Elaine Wood, of counsel, for Federal defendants.

Robert Abrams, Atty. Gen., for the State of N.Y., New York City, Angela M. Cartmill, of counsel, for State defendants.

Skadden, Arps, Slate, Meagher & Flom, New York City, Steven J. Kolleeny, of counsel, for Mead Data Cent., Inc.

Duncan, Fish & Bergson, Mineola, NY, Howard M. Bergson, of counsel, for Howard Bergson, Hyman Raffe, and A.R. Fuels, Inc.

Kreindler & Relkin, P.C., New York City, Jeffrey A. Wendler, of counsel, for Citibank, N.A., and Kreindler & Relkin, P.C.

## OPINION AND ORDER

LEISURE, District Judge:

This consolidated action is plaintiff *pro se* George Sassower's ("Sassower") latest attempt to relitigate the dissolution of Puccini Clothes, Ltd. ("Puccini"), which emanated in New York State Supreme Court in the early 1980s and spawned a plethora of related actions by Sassower in both federal and state courts, resulting in numerous decisions disposing of his actions, as well as various injunctions and orders issued by the courts in an effort to prevent the filing by him of further frivolous and vexatious lawsuits.

Despite having litigated the merits of every aspect of the Puccini dissolution, Sassower has engaged in a campaign of attrition in the federal and state court system for over a decade, by instituting dozens of lawsuits and hundreds of motions in an effort to harass those individuals and businesses who have become the target of his frivolous and vexatious lawsuits which seek, *inter alia,* reconsideration of the merits of the Puccini dissolution. Each time a lawsuit filed by Sassower has been dismissed by a court, or a court has issued an injunction or other sanction to stop his abuse of the judicial system, Sassower simply institutes another action which adds the names of the judges that ruled against him to the complaint and accuses them of being part of the "conspiracy" to cover-up the "looting" of the Puccini clothes company.

Sassower's litigation tactics and flagrant disregard of court orders has resulted in his disbarment from practice in state and federal courts, civil and criminal contempt adjudications, prison sentences, and numerous injunctions and orders across the nation. These injunctions attempt to prevent Sassower from filing any additional frivolous and vexatious lawsuits relating to the Puccini dissolution and other previously adjudicated matters.

More specifically, the Southern District of New York has evolved as Sassower's favorite federal forum for filing these vexatious lawsuits. His abuses have resulted in the issuance of two orders in this District aimed at preventing the filing of any additional lawsuits. In 1985, after Sassower brought four separate actions attempting to relitigate the Puccini dissolution, the Honorable William C. Conner, United States District Judge of this Court, dismissed the actions under the doctrines of *res judicata* and collateral estoppel, awarded fees to the defendants, and issued an order permanently enjoining him from bringing any further actions in any federal court relating to the Puccini dissolution or receivership. *See Raffe v. John Doe,* 619 F.Supp. 891 (S.D.N.Y.1985).

In direct violation of the injunction, Sassower filed another lawsuit in this District naming the same defendants and adding Judge Conner to the complaint. The Honorable Charles Brieant, then Chief Judge of this Court, dismissed the action as frivolous and entered another injunction prohibiting Sassower from filing "any actions" in the United States District Court for the Southern District of New York without prior leave of Court. *See United States for the Benefit of George Sassower v. Sapir,* 87 Civ. 7135 (CSH) (S.D.N.Y. December 10, 1987) (Exhibit 23)[1]. In addition, in July 1989, after Sassower continued to submit voluminous papers to the Clerk's Office in White Plains for filing, Judge Brieant orally directed the United States Marshal in the White Plains Courthouse to refuse Sassower access to the Courthouse unless he had a legitimate purpose for entering.

In an attempt to evade these injunctions, Sassower instituted the instant action by filing five separate lawsuits, relating to the Puccini dissolution and subsequent litigation arising therefrom, in New York State Supreme Court naming, *inter alia,* numerous federal and state judges and officials. The federal judges and officials (the "federal defendants") removed these actions to this Court pursuant to 28 U.S.C. § 1441(a) and (b), and § 1442(a)(3). On February 4, 1993, this Court consolidated the above referenced actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

## BACKGROUND

The details of Sassower's long history of vexatious litigation and abuse of the litigation process are a matter of public record and will not be repeated by this Court. *See, e.g., Sassower v. Sheriff of Westchester County,* 824 F.2d 184, 188 (2d Cir.1987); *Raffe v. John Doe,* 619 F.Supp. 891 (S.D.N.Y.1985). Instead, the Court will summarize Sassower's abuse of the judicial system which has persisted for over a decade and then discuss the five actions currently before this Court.

The long and tortured history of vexatious litigation arises out of Sassower's representa-

1. All numbered exhibits in this Opinion and Order refer to the exhibits contained in the Appendix to the federal defendants' Motion to Dismiss, dated March 24, 1993.

tion of Hyman Raffe, a shareholder of Puccini. Puccini, a New York corporation, was dissolved and placed in receivership in 1980 by the New York State Supreme Court. Raffe appealed the court's order and it was unanimously affirmed by the Appellate Division, First Department.

In the early 1980s, Sassower and Raffe filed numerous motions in New York state courts attempting to relitigate the dissolution and receivership of Puccini. The state courts repeatedly denied these motions and, on at least two occasions, imposed extraordinary costs and attorney's fees. Nevertheless, Raffe and Sassower continued to commence more lawsuits adding, as defendants, the judges and officials who ruled against them. The New York courts found that their various claims were precluded under principles of *res judicata*, as well as doctrines of qualified and absolute immunity protecting public officials and judicial officers, and such orders were affirmed by the Appellate Division, First Department. *See, e.g., Raffe v. Feltman, Karesh & Major*, 113 A.D.2d 1038, 493 N.Y.S.2d 70 (1st Dep't), *appeal dismissed*, 66 N.Y.2d 914, 498 N.Y.S.2d 1026, 489 N.E.2d 772 (1985).

On January 20, 1984, Sassower and Raffe brought an action in the Eastern District of New York naming the same list of Puccini defendants and adding, as defendants, several state court judges and New York State Attorney General Robert Abrams. *See Raffe v. Citibank, N.A.*, No. 84 Civ. 305 (E.D.N.Y.). On August 1, 1984, the Honorable Eugene H. Nickerson, United States District Judge, Eastern District of New York, dismissed the complaint on the grounds that (1) the claims against the private party defendants were barred by the doctrines of *res judicata* and collateral estoppel, and (2) the claims against the state court judges and Robert Abrams were barred by the Eleventh Amendment and the doctrine of absolute immunity. In addition, Judge Nickerson found that Sassower had conducted the litigation in a vexatious manner and granted defendants' motion for sanctions. On January 23, 1985, the Second Circuit affirmed Judge Nickerson's decision without opinion. *See Raffe v. Citibank,* *N.A.*, No. 84 Civ. 305 (E.D.N.Y. August 1, 1984), *aff'd mem.*, 779 F.2d 37 (2d Cir.1985).

Less than one month after the dismissal of the Eastern District action, Sassower and Raffe filed an action in the Southern District of New York which named, as defendants, many of the individuals who were the subject of the lawsuit in the Eastern District. The case was assigned to Judge Conner. *See Raffe v. John Doe*, 619 F.Supp. 891 (S.D.N.Y. 1985). Shortly after filing this action, Raffe and Sassower filed new actions in the New York state courts and the defendants in those actions moved the Supreme Court Special Term for a permanent injunction enjoining Raffe and Sassower from filing new lawsuits in the state courts. The New York Supreme Court subsequently granted the motion and entered an order permanently enjoining Sassower from filing any complaint or proceeding relating to Puccini dissolution in state court. *See In re Barr*, Index No. 01816/80 (N.Y.Sup.Ct., N.Y.Co. January 23, 1985) (Exhibit 24); *see also In re Barr*, Index No. 01816/80 (N.Y.Sup.Ct., N.Y.Co. March 11, 1986) (Exhibit 25); *In re Barr*, Index. No. 01816/80 (N.Y.Sup.Ct., N.Y.Co. March 1987) (Exhibit 26); *In re Barr*, Index No. 01816/80 (N.Y.Sup.Ct., N.Y.Co. September 2, 1988) (Exhibit 27).

Sassower and a new actor in the litigation, Sam Polur, Esq., disregarded that order and filed at least ten actions in New York Supreme Court related to the Puccini dissolution and, thus, Sassower was the subject of several criminal contempt convictions. *See Raffe v. Riccobono*, No. 9522/85, slip op. at 6–7 (Sup.Ct.N.Y.Co. July 1, 1985) (criminal contempt conviction), *aff'd*, 113 A.D.2d 1038, 493 N.Y.S.2d 70 (1st Dep't), *appeal dismissed*, 66 N.Y.2d 915, 498 N.Y.S.2d 1027, 489 N.E.2d 773 (1985), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Raffe v. Feltman, Karesh & Major*, 113 A.D.2d 1038, 493 N.Y.S.2d 70 (1st Dep't), *appeal dismissed*, 66 N.Y.2d 914, 498 N.Y.S.2d 1026, 489 N.E.2d 772 (1985). In *In re Barr, supra*, Sassower was convicted of criminal contempt and sentenced to 30–days imprisonment. *See In re Barr*, 121 A.D.2d 324, 324, 503 N.Y.S.2d 392, 392 (1st Dep't), *appeal dis-*

*missed,* 68 N.Y.2d 807, 506 N.Y.S.2d 1037, 498 N.E.2d 437 (1986).

During this same time frame, Sassower, Raffe, and Polur filed three additional actions in this Court which asserted the same claims contained in *Raffe v. John Doe* and named most of the same defendants. The cases were assigned to Judge Conner as related actions. *See Puccini Clothes, Ltd. v. Murphy,* No. 85 Civ. 3712 (WCC) (S.D.N.Y. filed May 16, 1985); *Raffe v. Riccobono,* No. 85 Civ. 3927 (WCC) (S.D.N.Y. filed May 23, 1985); *Raffe v. Relkin,* No. 85 Civ. 4158 (WCC) (S.D.N.Y. filed June 3, 1985).

On October 11, 1985, Judge Conner dismissed all four actions as being barred by the principles of *res judicata* and collateral estoppel. The Court stated:

> I have reviewed the complaint in this case and have compared it to the complaint filed in *Raffe v. Citibank, N.A.* On the basis of that review, I think it plain that the instant action is barred by the principles of *res judicata* and collateral estoppel set out above. The complaint in this action does no more than rehash the allegations put before Judge Nickerson. It is clear that Raffe and Sassower have merely attempted to revive issues that Judge Nickerson expressly held were without merit or barred by prior decisions in the state courts.

*Raffe v. Doe,* 619 F.Supp. at 896. The Court also awarded attorney's fees on the following grounds:

> [I]t is overwhelmingly clear that this suit is entirely without merit and that it has no basis in law or fact. Moreover, in view of Judge Nickerson's recent decision, to say nothing of the five-year history of duplicative state court proceedings, it is inconceivable that Raffe and Sassower had any legitimate purpose in instituting this action. Their only apparent aim was to harass the defendants in some desperate hope that they will eventually tire of defending lawsuits and surrender Puccini and its assets. This is nothing more than blackmail by litigation, and the Court will not tolerate it.

*Id.* at 897. Finally, Judge Conner issued an order permanently enjoining Sassower from bringing any further actions in federal court in connection with the Puccini dissolution or receivership. *Id.* at 898. The Second Circuit dismissed Sassower's subsequent appeal. *See* Nos. 85–7963, 7965, 7967, 7969 (2d Cir. March 18, 1986).

In 1987, in flagrant violation of the Court's injunction, Sassower filed another lawsuit in this District naming the same defendants, as well as adding Judge Conner and the judge who presided over Sassower's bankruptcy proceeding, the Honorable Howard Schwartzberg, as defendants. *See United States for the Benefit of George Sassower v. Sapir,* No. 87 Civ. 7135, 1987 WL 26596 (S.D.N.Y.1987). The case was originally assigned to the Honorable Charles S. Haight, United States District Judge, Southern District of New York, but after Judge Haight also was named as a defendant in the lawsuit, Judge Brieant took the case on reassignment.

On December 10, 1987, Judge Brieant dismissed the action on the grounds that Sassower's claims were frivolous and that Sassower had intentionally violated the 1985 injunction issued by Judge Conner. Judge Brieant also noted as follows:

> [The] inclusion of the assigned judge as an additional defendant has the effect, and probably the purpose of disrupting the orderly judicial decisional process of this district court insofar as concerns the motion to dismiss. Plaintiff, who used to be a lawyer, must be deemed to recognize that the Amended Complaint violates the 1985 injunction, and also that Judge Haight, and for that matter Judge Conner also, are immune from this sort of litigation.

*United States for the Benefit of George Sassower v. Sapir,* 87 Civ. 7135 (CSH), slip op. at 2 (S.D.N.Y. December 10, 1987) (Exhibit 23). Thus, Judge Brieant prohibited Sassower from filing any actions in the United States District Court for the Southern District of New York without prior leave of court. *Id.* at 3 ("*Sapir* order"). This order applies to "any actions" and, thus, expanded the injunction issued by Judge Conner in *Raffe v. Doe* which applied to the "Puccini related" submissions.

This pattern of frivolous and vexatious litigation resulted in Sassower's disbarment from practice in New York courts. *See In re Sassower,* 700 F.Supp. 100, 104 (E.D.N.Y. 1988), *aff'd,* 875 F.2d 856 (2d Cir.1989); *Matter of Sassower,* 125 A.D.2d 52, 53–54, 512 N.Y.S.2d 203 (2d Dep't), *appeal dismissed,* 70 N.Y.2d 691, 518 N.Y.S.2d 964, 512 N.E.2d 547 (1987); *see also In re Disbarment of Sassower,* 481 U.S. 1045, 107 S.Ct. 2174, 95 L.Ed.2d 831 (1987). Moreover, in 1989, the Second Circuit dismissed the sixth appeal filed by Sassower in a one-year period and warned Sassower that, if Sassower's abuse of the judicial process continued, he would be barred from the Second Circuit. *See Sassower v. Sansverie,* 885 F.2d 9, 11 (2d Cir. 1989).

After abusing the federal and state court systems in New York for almost a decade, Sassower began to institute these lawsuits outside the State of New York adding the names of the New York federal judges to the list of defendants. These lawsuits, which sought to revive the Puccini lawsuit as well as challenge the subsequent litigation defeats and sanctions, were brought in district courts in California, Maryland, Minnesota, New Jersey, Ohio and Washington, D.C.[2] Each district court imposed sanctions and/or injunctive relief which sought to prevent Sassower from continuing his vexatious lawsuits. Sassower also brought appeals in the courts of appeal for the Third, Fourth, Sixth, Eighth, and Ninth Circuits.[3]

The lawsuit filed in New Jersey, before the Honorable Nicholas H. Politan, resulted in a conviction of criminal contempt against Sassower for failure to obey court orders. *See Sassower v. Feltman,* 88 Civ. 1562 (NHP) (D.N.J. October 6, 1989). Sassower, in response to the contempt conviction, instituted a second action in the New Jersey district court which named Judge Politan as a defendant. The Third Circuit determined that Sassower had filed, *inter alia,* "numerous repetitive pleadings, motions, briefs and other submissions containing frivolous legal arguments, flagrant misstatements of fact, and scurrilous allegations in these appeals and petitions for writs of mandamus/prohibition." *See Sassower v. Abrams,* No. 91–8063, slip op., at 1 (3d Cir. February 12, 1992) (Exhibit 15). Thus, the Third Circuit enjoined Sassower from filing any appeal, petition, motion, or pleading in the Third Circuit relating to the Puccini defendants, as well as numerous federal judges, in connection with the previously adjudicated matters. *Id.* at 4–5.

Sassower then filed two complaints in the federal district court in Minnesota. *See Sassower v. Carlson,* Civ. 4–90–511 (D.Minn. August 20, 1990); *Sassower v. Dosal,* 744 F.Supp. 908 (D.Minn.1990). In these two actions, Sassower, *inter alia,* identified a group of "racketeering defendants" including members of the Southern and Eastern Districts of New York, members of the Second and Third Circuits, a Magistrate Judge, a Bankruptcy Judge, a Chief Clerk, a United States Attorney, several Assistant United States Attorneys, the New York Attorney General, the District Attorney of Nassau County, several state judicial personnel, and counsel. The district court in *Dosal* determined that the claims were "wholly frivolous and malicious" and, thus, the complaint was dismissed for lack of subject matter jurisdiction. *Id.* at 909. Both Minnesota actions were dismissed with prejudice. The Eighth Circuit affirmed the dismissals and issued an injunction enjoining Sassower from filing any civil action in the United States District Court for Minnesota without first obtaining leave of that court. *See Sassower v. Carlson,* 930 F.2d 583 (8th Cir.1991).

---

2. Sassower's complaints also included allegations regarding his bankruptcy proceedings, the "plundering" of the Estate of Eugene Paul Kelly, and the incarceration of Dennis F. Vilella. However, these claims, along with all of Sassower's other claims, have been fully litigated and dismissed on the merits. *See Sassower v. Signorelli,* 99 A.D.2d 358, 472 N.Y.S.2d 702 (2d Dep't 1984); *Sassower v. Finnerty,* 96 A.D.2d 585, 465 N.Y.S.2d 543 (2d Dep't 1983), *appeal dismissed,* 61 N.Y.2d 756, 472 N.Y.S.2d 923, 460 N.E.2d 1358 (1984); *Cohen and Vilella v. Litman,* No. 89 Civ. 7049 (S.D.N.Y.1989); *In re Barr,* Index No. 01816/80 (N.Y.Sup.Ct., N.Y.Co. September 2, 1988) (Exhibit 33).

3. A chart outlining Sassower's history of litigation is attached as Exhibit 1 to the federal defendants' Appendix to the Motion to Dismiss.

Sassower then refiled his complaint in November 1991 in the Southern District of Ohio. *See Sassower v. Mead Data Central*, Civ. 3–91–436 (S.D.Ohio) (Complaint) (Exhibit 17). In that case, Sassower alleged "criminal racketeering activity" by Judge Oakes, Judge Pratt, Judge Brieant, Judge Conner, Judge Nickerson, Judge Goettel, and others. *See* Complaint, at ¶ 9(e)(3). In addition to alleging corruption on the part of past judges who issued injunctions and other sanctions due to his vexatious litigation, Sassower sought to have the Puccini-related orders declared invalid. Complaint, at ¶ 37a. Sassower also sought to enjoin Mead Data Central, Inc. (*i.e.*, LEXIS), a computer data base company which publishes judicial opinions, from publishing or distributing certain decisions rendered against him. In February 1992, the Ohio case was dismissed. *See Sassower v. Mead Data Central, Inc.*, Civ. 3–91–436 (S.D.Ohio February 18, 1992). However, shortly thereafter, Sassower refiled the complaint naming the Magistrate Judge who had been assigned to the first Ohio complaint as a defendant. On May 13, 1992, the district court dismissed the second complaint and issued an injunction which was similar in scope to the Eighth Circuit's injunction and, thus, barred him from filing any further actions in the Southern District of Ohio. *See Sassower v. Thompson, Hine and Flory*, 92 Civ. 27 (S.D.Ohio May 13, 1992) (Exhibit 19). Sassower appealed the dismissal of both complaints and the injunction issued by the district court. The Sixth Circuit denied the appeal and enjoined him from filing or prosecuting any civil actions in the Eighth Circuit or any court in that Circuit. *See Sassower v. Mead Data Central*, No. 92–3537, 1993 WL 57469 (6th Cir. March 4, 1993) (Exhibit 21); *Sassower v. Thompson, Hine and Flory*, No. 92–3553, 1993 WL 57466 (6th Cir. March 4, 1993) (Exhibit 22).

The Court notes the Fourth and Ninth Circuits, as well as the District Court for the District of Columbia, also have issued injunctions barring suits by Sassower. *See Sassower v. Whiteford, Taylor & Preston*, No. 90–1142, slip op., 1991 WL 136589 (4th Cir. July 2, 1991) (Exhibit 16); *Sassower v. General Ins. Co.*, 962 F.2d 15 (9th Cir.1992); *Sassower v. Barr*, Nos. 91–3233, 91–3302, 1992 WL 133163 (D.D.C. January 9, 1992) (Exhibit 14).

The instant actions before this Court were instituted by Sassower in New York Supreme Court, Westchester County, and removed to this Court by the federal defendants. The Court will briefly describe the allegations contained in the lawsuits which are currently before this Court.[4]

In *Sassower v. Abrams*, 92 Civ. 8515 (PKL), Sassower names several federal and state judges and officials as defendants and asserts, *inter alia*, allegations of corruption and criminal misconduct in connection with the Puccini dissolution and subsequent litigation.[5] Sassower alleges as follows:

> The defendants, except for Raffe and [A.R. Fuels], are *all* involved in the larceny of the judicial trust assets of PUCCINI CLOTHES, LTD. ["Puccini"], the diversion of monies from the federal, state, and

---

4. The Court notes that it appears that many of the defendants in these various actions have not been properly served. *See* Letter to the Court from Feltman, Karesh, Major & Farbman, dated February 3, 1993; Letter and Affirmation on behalf of Bleakley Platt & Schmidt and John McFadden, dated February 17, 1993. Assuming *arguendo* that such defendants were properly served, the lawsuits against all defendants are subject to dismissal for the reasons discussed below. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 6 (2d Cir.1990) ("*Sua sponte* dismissal of the complaint with respect to [the non-appearing defendant] is appropriate here, because the issues concerning [the non-appearing defendant] are substantially the same as those concerning the other defendants and Hecht, the party against whom the judgment of dismissal was entered, had notice and a full opportunity to make out his claim against [the non-appearing defendant]"); *see also Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir.1988) (discussing when *sua sponte* dismissals are appropriate). Therefore, the improper service issue is moot.

5. The named defendants in *Sassower v. Abrams* are: New York State Attorney General Robert Abrams, N.Y. State Judge Francis T. Murphy, N.Y. State Administrative Judge Xavier C. Riccobono, U.S. District Judge Charles L. Brieant, U.S. Circuit Court Judge James L. Oakes, A.R. Fuels, Inc., Hyman Raffe, Howard Bergson, Fred L. Shapiro, N.Y. Special Referee Donald Diamond, Assistant Attorney General Carolyn Cairns Olson, and Chief Administrator of the N.Y. Unified Court System, Matthew T. Crosson.

local governmental purses to the private pockets of their cronies, extortion of monies in favor of their cronies to avoid conviction under a criminal conviction and a criminal report, and other criminal racketeering ["enterprise corruption"] activities. Amended Complaint, dated November 12, 1992, at ¶ 7(a). In addition, Sassower alleges that "[t]he official and judicial defendants employ their status to 'fix' other judges, directly and/or indirectly." *Id.* at ¶ 13(a). Sassower claims that Judge Brieant's order in *Sapir* is part of the "conspiracy" to deprive him of his constitutional rights. *See* Plaintiff's Notice to Admit [Charles L. Brieant] First Set, at ¶¶ 12–35 (Exhibit 6). Sassower also challenges various decisions of the Eastern District of New York and the Second Circuit. *See* Plaintiff's Notice To Admit [James L. Oakes] First Set, at ¶¶ 3–20 (Exhibit 5).

In *Sassower v. Mead Data Central, Inc.,* 92 Civ. 9220 (PKL), Sassower adds more defendants, but again focuses on the Puccini dissolution, the "plundering" of the Eugene Paul Kelly, and the incarceration of Dennis F. Vilella.[6] *See* Complaint, dated November 16, 1992, at ¶ 8(e). Sassower also alleges that "[i]n addition to the facilities of West, Westlaw, Lexis, [Lawyers Cooperative Publishing Co.], and [the New York Law Journal] [sic] for the operation of such racketeering enterprises, the cooperation of N.Y. State Attorney General Abrams, U.S. Attorney General Barr, Chief U.S. Circuit Court Judge Merritt, [former] Chief U.S. Circuit Court Judge Lay, and Chief U.S. Circuit Court Judge Arnold, were or are needed." *Id.* at ¶ 9(a). Sassower names federal district and circuit judges from the Second, Sixth and Eighth Circuits as defendants in connection with their past adjudications of various lawsuits filed by Sassower.

In *Sassower v. Feltman,* 92 Civ. 9221 (PKL), Sassower again makes various allegations against federal and state judges and officials, as well as certain private defendants which arise out of prior adjudications and orders issued by New York state and federal courts.[7]

In *Sassower v. McFadden,* 93 Civ. 342 (PKL), and *Sassower v. Brieant,* 93 Civ. 343 (PKL), Sassower has failed to file and serve a complaint. These cases were filed in New York State Supreme Court by service of a summons without a complaint pursuant to New York C.P.L.R. § 304. The Court, by Order dated February 4, 1993, directed Sassower to file and serve a complaint within 10 days. Sassower has failed to comply with the Court's order and, thus, the Court dismisses these actions for failure to prosecute. In any event, the Court notes that *Sassower v. McFadden* already had been dismissed by Justice Denis W. Donovan of the Supreme Court of Westchester County on January 8, 1993, prior to the removal of the case to this Court on January 20, 1993.[8] Thus, the

---

**6.** The named defendants in *Sassower v. Mead Data Central* are: Mead Data Central, Inc., West Publishing Co., Lawyers Cooperative Publishing Co., Price Communications Corp., former United States Attorney General William P. Barr, Barbara L. Herwig, U.S. Attorney for the Southern District of Ohio D. Michael Crites, New York State Attorney General Robert Abrams, U.S. Circuit Judge Thomas J. Meskill, U.S. Circuit Judge James L. Oakes, U.S. Circuit Judge Jon O. Newman, U.S. Circuit Judge George C. Pratt, U.S. District Judge Charles L. Brieant, U.S. District Judge William C. Conner, U.S. District Judge Gerard L. Goettel, U.S. District Judge I. Leo Glasser, N.Y. State Justice Francis T. Murphy, N.Y. State Justice Milton Mollen, Chief Administrator of N.Y. Unified Court System Matthew T. Crosson, N.Y. State Justice William C. Thompson, N.Y. State Justice Isaac Rubin, N.Y. State Justice Xavier C. Riccobono, N.Y. State Justice Ira Gammerman, N.Y. Supreme Court Special Referee Donald Diamond, Kreindler & Relkin, P.C., Citibank, N.A., Feltman, Karesh, Major &

Farbman, U.S. Circuit Judge Gilbert S. Merritt, U.S. Circuit Judge Donald P. Lay, U.S. Circuit Judge Richard S. Arnold, U.S. Magistrate Judge Michael R. Merz, Lawrence J. Glynn, 16 Lake Street Owners, and Denis Dillon, District Attorney for Nassau County.

**7.** The defendants named in *Sassower v. Feltman* are: Feltman, Karesh, Major & Farbman, N.Y. State Justice Xavier C. Riccobono, N.Y. State Supreme Court Special Referee Donald Diamond, N.Y. State Justice Francis T. Murphy, N.Y. Court of Appeals Judge Joseph W. Bellacosa, Chief Administrator of N.Y. Unified Court System Matthew T. Crosson, N.Y. State Justice Albert M. Rosenblatt, N.Y. State Justice Joseph B. Gagliardi, N.Y. State Attorney General Robert Abrams and U.S. District Judge Charles L. Brieant.

**8.** The Court has included a copy of Justice Donovan's decision in the Court file.

*McFadden* case is improperly before this Court.[9]

## DISCUSSION

### I. DISMISSAL OF THE CURRENT LAWSUITS

Various defendants have moved to dismiss the lawsuits contained in this consolidation action pursuant to Fed.R.Civ.P. 12(b) or have moved for summary judgment under Fed. R.Civ.P. 56. The federal defendants have moved to dismiss the complaints in this consolidated case pursuant to Fed.R.Civ.P. 12(b)(1) and (6) on grounds of absolute immunity and failure to state a claim upon which relief can be granted. The state defendants have joined in the federal defendants' motion and also move to dismiss on grounds of *res judicata.*

Defendants Bergson, Raffe and A.R. Fuels, Inc. have moved for dismissal pursuant to Fed.R.Civ.P. 12(b) on the grounds that the Court lacks proper jurisdiction, the complaint fails to set forth a cause of action, the claims are barred by collateral estoppel and *res judicata,* the claims are barred by applicable statute of limitations, the claims are barred by applicable federal and state injunctive relief and the claims are barred by documentary evidence. Defendant Mead Data Central, Inc. has moved for summary judgment on the grounds of absolute privilege to publish legal opinions and the doctrine of *res judicata.*[10]

Having reviewed the various complaints in this consolidated action, the Court finds that all of the complaints are subject to dismissal pursuant to Rule 12(b)(6) for one or more of the following reasons: (1) several of the complaints, on their face, violate prior injunctions; (2) the federal and state judges are shielded from liability under the doctrine of absolute immunity; (3) the claims are barred by principles of *res judicata* and collateral estoppel; and (4) the actions contain only frivolous and vexatious claims which have been the subject of prior litigation and injunctions and, thus, are subject to summary dismissal.[11]

### A. VIOLATION OF PREVIOUS INJUNCTION

 Sassower has been permanently enjoined from filing any action in any New York state court against the Estate of Milton Kaufman, Jerome H. Barr, Citibank, N.A., the law firm of Kreindler & Relkin, P.C., Lee Feltman, the law firm of Feltman, Karesh & Major, and several others in connection with matters related in any way to the Puccini dissolution or the subsequent litigation arising therefrom.[12] *See In re Barr,* No. 01816/80, at 9–11 (N.Y.Sup.Ct., N.Y.Co. January 23, 1985) (Exhibit 24); *see also In re Barr,* Index No. 01816/80 (N.Y.Sup.Ct., N.Y.Co. March 11, 1986) (Exhibit 25); *In re Barr,* Index. No. 01816/80 (N.Y.Sup.Ct., N.Y.Co. March 1987) (Exhibit 26); *In re Barr,* Index. No. 01816/80 (N.Y.Sup.Ct., N.Y.Co. September 2, 1988).

Nevertheless, two of the three complaints before this Court—*Sassower v. Mead Data Central,* 92 Civ. 9220 (PKL), and *Sassower v. Feltman, Karesh, Major & Farbman,* 92 Civ. 9221 (PKL)—were originally brought in New York state court and name one or more of the above individuals or entities as defendants. Since these two actions were filed in New York state court in flagrant violation of

9. Moreover, as discussed below, these two actions also are subject to dismissal on the grounds that such actions violate prior injunctions of the New York state courts.

10. The Court has stayed all discovery pending the Court's decision on these motions.

11. The Court notes that Sassower's claims are so patently frivolous that the Court also could dismiss the complaints under Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction. *See State of New York District Attorney Investigators Police Benevolent Ass'n, Inc. v. Richards,* 711 F.2d 8, 10 (2d Cir. 1983) ("[t]he test for determining whether federal jurisdiction exists is whether the alleged cause of action is *"so patently without merit"* as to justify dismissal for lack of jurisdiction"); *see also Sassower v. Carlson,* 930 F.2d 583, 584 (8th Cir.1991) (affirming *sua sponte* dismissal of various claims on the grounds that the claims were frivolous and malicious and, thus, the Court lacked subject matter jurisdiction).

12. A similar injunction bars Sassower from filing any action in any federal court against these individuals in connection with the Puccini litigation. *See Raffe v. John Doe,* 619 F.Supp. at 898.

the prior injunction which prohibited such lawsuits, the Court must dismiss the actions as being enjoined by the *In re Barr* injunction.[13]

The only action which does not name one of the prohibited defendants is *Sassower v. Abrams*, 92 Civ. 8515 (PKL). However, the Court's analysis below with respect to the remaining grounds for dismissal applies not only to *Sassower v. Abrams*, but also *Sassower v. Mead Data Central, Inc.* and *Sassower v. Feltman, Karesh, Major & Farbman*.[14]

## B. ABSOLUTE IMMUNITY

■ Sassower has asserted claims against numerous federal and state judicial officers (hereinafter referred to as the "judicial defendants") alleging misconduct and corruption.[15] It is axiomatic that a judge is absolutely immune from a civil suit for money damages. *See Mireles v. Waco*, — U.S. —, —, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991); *Forrester v. White*, 484 U.S. 219, 225–29, 108 S.Ct. 538, 543–45, 98 L.Ed.2d 555 (1988); *Butz v. Economou*, 438 U.S. 478, 508–14, 98 S.Ct. 2894, 2911–14, 57 L.Ed.2d

895 (1978); *Stump v. Sparkman*, 435 U.S. 349, 355–64, (1978). The Supreme Court has emphasized that this immunity can be overcome only under two limited sets of circumstances:

> First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Mireles*, — U.S. at —, 112 S.Ct. at 288 (citations omitted). The Court finds that all of the judicial defendants are named as defendants in the various actions in connection with their performance of judicial functions as a court of competent jurisdiction. After the Court disregards the conclusory and frivolous allegations of corruption and misconduct against these judicial defendants, there is no alleged conduct by these judicial defendants which would fall outside the parameters of the doctrine of absolute immunity and form the basis of a cognizable claim.[16] Thus, Sassower's claims for monetary damages against the judicial defendants are barred by the doctrine of absolute immunity.[17]

13. The Court notes that the summons in *Sassower v. McFadden*, 93 Civ. 342 (PKL) and *Sassower v. Brieant*, 93 Civ. 343 (PKL) also name one or more of these individuals as defendants and, thus, are subject to dismissal as violating the New York state injunction.

14. The Court cannot consider the remaining grounds for dismissal as to *Sassower v. McFadden* and *Sassower v. Brieant* because no complaints have been filed in those actions.

15. The federal judges named as defendants are: United States District Judge Charles L. Brieant, United States District Judge William C. Conner, United States District Judge I. Leo Glasser, United States District Judge Gerard L. Goettel, United States Circuit Judge Richard S. Arnold, United States Circuit Judge Donald P. Lay, United States Circuit Judge Gilbert S. Merritt, United States Circuit Judge Thomas J. Meskill, United States Circuit Judge Jon O. Newman, United States Circuit Judge George C. Pratt, United States Magistrate Judge Michael R. Merz.

The state judges named as defendants are: Justice Francis T. Murphy, New York Supreme Court Appellate Division, First Department; Justice Xavier C. Riccobono, New York Supreme Court Appellate Division, First Department; Donald Diamond, New York Supreme Court Special Referee; Justice Milton Mollen, New York

Supreme Court Appellate Division, Second Department; Justice Williams C. Thompson, New York Supreme Court Appellate Division, Second Department; Justice Isaac Rubin, New York Supreme Court, Appellate Division, Second Department; Justice Ira Gammerman, New York Supreme Court, First Judicial District; Judge Joseph W. Bellacosa, New York Court of Appeals, Justice Albert M. Rosenblatt, New York Supreme Court Appellate Division, Second Department, Justice Joseph B. Galiardi, New York Supreme Court, Ninth Judicial Circuit.

This list does not include the federal and state judges who are only named as defendants in *Sassower v. McFadden*, 93 Civ. 342 (PKL) or *Sassower v. Brieant*, 93 Civ. 343 (PKL).

16. The Court notes that the claims against federal and state officials, other than judges, may be precluded by the doctrine of qualified immunity. However, unlike absolute immunity, qualified immunity is measured by a standard of objective reasonableness, and therefore cannot ordinarily support dismissal under Fed.R.Civ.P. 12(b)(6). *See Liffiton v. Keuker*, 850 F.2d 73, 76 (2d Cir. 1988). However, as noted below, there are other grounds which require dismissal of the claims against these federal and state officials.

17. It also is well settled that "a prosecutor acting within the scope of his duties in pursuing a

■ To the extent that Sassower also seeks injunctive relief against the judicial defendants, the Court finds that the claims are patently frivolous. The only basis for these conclusory allegations of misconduct against the judicial defendants is that they issued decisions or rendered orders adverse to him. These lawsuits merely constitute attempts to relitigate these adjudicated matters by suing the judges who continue to dismiss his frivolous complaints. Accordingly, the Court finds that the frivolous claims for injunctive relief against these judicial defendants must be dismissed without further consideration.

## C. *RES JUDICATA* AND COLLATERAL ESTOPPEL

■ Defendants Mead Data Central, Inc., Howard Raffe, A.R. Fuels, Inc., Howard Bergson, and the state defendants have moved for dismissal on grounds of *res judicata* and collateral estoppel, which prevent a party from relitigating claims or issues that were resolved in prior lawsuits.[18] While not all the defendants have moved on these grounds, the Court, recognizing Sassower's history of frivolous and vexatious litigation, will address this issue as to all defendants because Sassower has had an opportunity to address this issue and the Court has all the necessary data and legal records before it. *See Carbonell v. Louisiana Dep't of Health & Human Resources,* 772 F.2d 185, 189 (5th Cir.1985) (court may dismiss *sua sponte* on *res judicata* grounds provided that it either has before it "all relevant data and legal

records" or is in the same district in which the original action was filed); *see also Salahuddin v. Jones,* 992 F.2d 447, 449 (2d Cir. 1993) (citing *Carbonell* with approval).

■ The doctrine of *res judicata* bars relitigation of the same claims between the same parties or their privies after the matter has once been resolved by a court of competent jurisdiction. *Stone v. Williams,* 970 F.2d 1043, 1054 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993); *Ruiz v. Commissioner of Dep't of Transp. of the City of New York,* 858 F.2d 898, 902 (2d Cir.1988). *Res judicata* also precludes litigation of all claims that could have been raised in the earlier proceeding, whether or not they were actually raised and litigated. *See Greenberg v. Board of Governors of Federal Reserve Sys.,* 968 F.2d 164, 168 (2d Cir.1992); *Harborside Refrigerated Services, Inc. v. Vogel,* 959 F.2d 368, 372 (2d Cir.1992).

■ Collateral estoppel is a narrower doctrine that bars " 'a party from relitigating "an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." ' " *Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir.1991) (quoting *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 66 (1985) (citations omitted)). The doctrine of collateral estoppel applies when an issue was necessarily and conclusively determined in a prior proceeding and the party to be bound had a

---

criminal prosecution is absolutely immune from civil suit under § 1983." *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993). Thus, to the extent such claims are made against prosecutors named as defendants in the instant action, these defendants also are subject to absolute immunity.

Similarly, publishers of legal opinions are provided with absolute immunity under New York Civil Rights Law § 74 and, therefore, claims against such publishers also must be dismissed.

**18.** Defendants Raffe, A.R. Fuels, and Bergson have moved to dismiss the claims on *res judicata* grounds, while defendant Mead Data Central has moved for summary judgment on the same grounds.

The Court notes it is well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion. *See*

*Salahuddin v. Jones,* 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of claims under Rule 12(b) on grounds of *res judicata* ); *Day v. Moscow,* 955 F.2d 807, 811 (2d Cir.) ("when all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of *res judicata* ] may be upheld on a Rule 12(b)(6) motion without requiring an answer"), *cert. denied,* —— U.S. ——, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992); *Pyles v. Keane,* 418 F.Supp. 269, 273 (S.D.N.Y.1976) ("it is generally held that, in the interest of efficient and expeditious judicial administration, *res judicata* [and, as a corollary, collateral estoppel] can be raised and considered via pre-trial motion to dismiss") (quotation and citation omitted).

Therefore, the defense of *res judicata* or collateral estoppel may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment.

full and fair opportunity to litigate the issue. *See Khandhar*, 943 F.2d at 247. Thus, issue preclusion applies where:

(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*In re PCH Assocs.*, 949 F.2d 585, 593 (2d Cir.1991).

*Res judicata* and collateral estoppel are thus related doctrines that overlap but have differing scopes:

In essence, the functional difference between claim preclusion and issue preclusion is that while only the former can operate to prevent litigation of a matter that has never been decided, both prevent relitigation of an issue of fact or law that has already been necessarily decided as part of a valid, final judgment.

*Stone*, 970 F.2d at 1054. Both of these doctrines are "founded upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court." *Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946).

■ In the instant case, the allegations made by Sassower in each of the actions address the Puccini dissolution and the decisions of state and federal judges over the past decade which have dealt with Sassower's attempt to relitigate the dissolution and other previously adjudicated matters. First, the claims relating to the Puccini dissolution have been litigated over and over again in various state and federal courts across the nation. *See, e.g., Raffe v. John Doe*, 619 F.Supp. 891, 896–97 (S.D.N.Y.1985) (dismissing several complaints filed by Sassower on behalf of Hyman Raffe on the grounds of *res judicata* and collateral estoppel); *see also Sassower v. Thompson*, 92–3553, slip op. at 2, 1993 WL 57466 (6th Cir. March 4, 1993) (Exhibit 22) (affirming dismissal of claims arising from the Puccini Clothes matter under the doctrine of *res judicata*); *Sassower v. Mead Data Central, Inc.*, No. 92–3537, slip op., at 2, 1993 WL 57469 (6th Cir. March 4, 1993) (Exhibit 21) (affirming dismissal of various claims on jurisdictional grounds, on the basis of immunity, and under the principles of *res judicata*). As to the alleged misconduct by various judicial officers and government officials in connection with cases brought by Sassower to relitigate the Puccini dissolution and attempts by Sassower to challenge prior sanctions and injunctions, the Court finds that these claims also have been repeatedly dismissed in other courts of competent jurisdiction and have been the subject of injunctions issued by other courts. *See Sassower v. Abrams* and *Sassower v. Feltman*, 91–8063, slip op. at 5 (3d Cir. February 12, 1992) (Exhibit 15); *Sassower v. Whiteford, Taylor & Preston*, 90–1142, slip op., 1991 WL 136589 (4th Cir. July 2, 1991) (Exhibit 16).

The Court has reviewed several of the complaints filed in other jurisdictions by Sassower which have been dismissed. *See Sassower v. Carlson*, No. 4–90–511 (D.Minn. August 20, 1990) (Annexed as Exhibits A and B to the Affidavit of Steven J. Kolleeny, sworn to on March 11, 1993 ("Kolleeny Affidavit"); *Sassower v. Dosal*, No. 4–90–571 (D.Minn. September 5, 1990) (Annexed as Exhibits C and D to the Kolleeny Affidavit); *Sassower v. Mead Data Central, Inc.*, C 3–91–436 (S.D.Ohio February 19, 1992) (Annexed as Exhibits E and F to the Kolleeny Affidavit); *Sassower v. Thompson, Hine and Flory*, C–3–92–27 (S.D.Ohio May 13, 1992) (Exhibits 18 and 19).

■ Based upon a review of those actions, the Court finds that claims against all defendants in the three pending actions are barred by principles of *res judicata* and collateral estoppel except for the following defendants: New York Court of Appeals Judge Joseph W. Bellacosa, New York Supreme Court Justice Albert M. Rosenblatt, New York Supreme Court Justice Joseph B. Galiardi, New York Supreme Court Justice Isaac Rubin, United States Circuit Judge Jon O. Newman, United States Circuit Judge

Thomas J. Meskill, United States Circuit Judge Lay, United States Circuit Judge Arnold, United States Circuit Judge Gilbert S. Merritt, Fred L. Shapiro, Principal Court Attorney of New York's Ninth Judicial District, Assistant New York State Attorney General Carolyn Cairns Olson, former United States Attorney General William P. Barr, and Barbara L. Herwig.[19] Accordingly, the Court concludes that the various claims and allegations against the defendants, other than those enumerated above, are subject to dismissal under principles of *res judicata* and collateral estoppel.

As discussed in detail below, to the extent Sassower claims that he is making new allegations of misconduct and corruption against various federal and state judges, other government officials and certain private defendants which are not precluded by the doctrines of absolute immunity, collateral estoppel, or *res judicata*, the Court finds that such additional claims must be dismissed as frivolous and vexatious.

## D. FRIVOLOUS AND VEXATIOUS LITIGATION

 Aside from the aforementioned grounds for dismissal, the Court finds that these actions are subject to dismissal as frivolous and vexatious litigation. The *Sapir* order prohibits Sassower from filing any action or motion in the United States District Court for the Southern District of New York without prior leave of the court. *See United States for the Benefit of George Sassower v. Sapir*, 87 Civ. 7135 (CSH) (S.D.N.Y. December 10, 1987) (Exhibit 23). While these actions arguably do not fall within the scope of the *Sapir* order or Judge Conner's 1985 injunction because they originated in state court and were removed to this Court by certain defendants, Sassower should not be able to use defendants' removal of these actions as an opportunity to thwart the clear intent of the 1985 injunction and *Sapir* order by renewing his frivolous and vexatious litigation in this Court. Having reviewed Sassower's newest lawsuits and the tortured history of litigation preceding these current lawsuits, the Court finds that Sassower's suits are simply relitigating prior cases which have been dismissed in this Court and numerous other courts, as well as raising conclusory allegations of corruption and misconduct against various parties. In essence, Sassower is engaged in a bad faith attempt to relitigate adjudicated matters by adding the names of judges, officials, and private individuals who have been involved in the numerous past decisions rejecting his claims. The Court concludes that these actions are unequivocally intended to harass the named defendants, and there is absolutely no legal basis for recovery. The Court will not permit Sassower to circumvent the 1985 injunction and *Sapir* order and engage in yet another series of vexatious lawsuits in this Court which will harass defendants with needless litigation and result in further abuse of the judicial system. On this basis alone, all of these actions are subject to dismissal as frivolous and vexatious litigation.

In sum, the Court concludes that all of the complaints in this consolidated action are dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[20]

## II. SASSOWER'S MOTIONS

 Sassower has brought a string of duplicative motions and petitions for various kinds of relief. First, Sassower has moved for a "general bias recusal, or alternatively a personal bias recusal." The decision of whether recusal is appropriate is vested in the discretion of the district judge. *See In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988), *cert. denied*, 490

19. Since the current record only contains several complaints from other actions which have been dismissed, the Court notes that the enumerated defendants may have been subject to one of Sassower's prior vexatious suits in another action. However, the Court can only apply the principles of collateral estoppel and *res judicata* to the prior complaints which have been submitted in the record before the Court.

20. The Court notes that the moving defendants also have asserted other grounds for dismissal of the Sassower complaints. While these contentions by the defendants also have merit and provide alternative grounds for dismissal, the Court will not discuss these contentions in detail because the grounds discussed above require dismissal of the complaints in their entirety.

U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). The Second Circuit has stated that "[i]n deciding whether to recuse himself, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *Id.*

██ The Court does not believe that there is any basis for recusal in the instant actions. The basis of Sassower's recusal motion appears to be the Court's Opinion and Order, dated February 10, 1993, which denied his motion for a temporary restraining order and preliminary injunction seeking to enjoin court personnel at the United States Courthouse in White Plains from carrying out the order of Judge Brieant requiring security personnel to bar Sassower from entering the Courthouse except for legitimate purposes. The Court emphasizes that "[a]dverse rulings alone do not amount to a claim of personal bias or prejudice as outlined in [28 U.S.C. § 144]." *Martin–Trigona v. Shiff*, 600 F.Supp. 1184, 1187 (D.D.C.1984). Thus, "[d]isagreement with a court's rulings in an action cannot serve as a basis for recusal." *Id.* The Court is aware of no grounds for recusal in the instant actions and, thus, Sassower's motion is denied in its entirety. *See In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1312 ("A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is.").

Sassower has filed a flurry of other motions in the various lawsuits contained in this consolidated action. For example, in one motion alone, Sassower requests, *inter alia*, that the Court issue an order:

(3a) vacating, as unauthorized, the Notice of Removal by U.S. Attorney OTTO G. OBERMAIER, dated November 23, 1992, with sanctions, monetary and otherwise; (b) prohibiting any federal attorney from representing in this litigation, the defendants, JAMES L. OAKES and CHARLES L. BRIEANT, at federal cost and expense, and compelling JAMES L. OAKES, CHARLES L. BRIEANT and U.S. Attorney OTTO G. OBERMAIER to reimburse the United States agencies of the United States for any and all costs and expenses incurred by such unauthorized representation; (c) disqualifying U.S. Attorney OTTO G. OBERMAIER and his office from representing JAMES L. OAKES and CHARLES L. BRIEANT; (4a) prohibiting any state defendant from litigating this matter in the federal forum, at state cost and expense, as violative of Amendment Eleventh [sic] of the U.S. Constitution; (b) disqualifying ROBERT ABRAMS, from representing any defendant, except himself, in this action, and then only at his personal cost and expense; (5) directing U.S. Attorney OTTO G. OBERMAIER to recover all monies payable "to the federal court", including monies paid on behalf of plaintiff, which monies were diverted to private pockets; (6) directing U.S. Attorney OTTO G. OBERMAIER to take such action as may be lawfully necessary to permit plaintiff's physical ingress to the Federal Building and Courthouse in White Plains, New York, and access to publicly filed papers therein; (7) enjoining U.S. Attorney OTTO G. OBERMAIER from interfering with plaintiff's First Amendment and statutory rights, including his right to communicate with the grand jury regarding criminal activities in the Southern District of New York; (8) compelling U.S. Attorney OTTO G. OBERMAIER to make a 18 U.S.C. § 3057 investigation and report; (9) compelling U.S. attorney OTTO G. OBERMAIER to make an 18 *U.S.C.* § 3332[s] grand jury presentation which comports with the appearance of justice; (10) referring this and related matters to the Public Integrity Section of the U.S. Department of Justice.

Plaintiff's Notice of Motion, dated November 27, 1992, at 1–3 (Exhibit 4). Sassower also has brought various other motions including, *inter alia*, motions for summary judgment and motions for temporary restraining orders and preliminary injunctions. The Court finds that Sassower's motions are frivolous and provide absolutely no legal or factual basis for relief. Accordingly, the Court denies all of Sassower's motions in their entirety.

## III. DEFENDANTS' REQUEST FOR IN-JUNCTIVE RELIEF

■ The federal defendants, as well as several other defendants, have moved for the issuance of a new injunction against Sassower which would prevent Sassower from circumventing the series of orders and injunctions aimed at stopping his abuse of the judicial system. As noted earlier, this Court has already issued an order enjoining Sassower from filing actions without first obtaining leave of Court. More specifically, the *Sapir* order directed the Clerk of this Court:

> not to accept for filing any paper or proceeding or motion or new case of any kind presented by Mr. George Sassower, or naming him as a party plaintiff or petitioner, without the leave in writing first obtained from a judge or magistrate of this Court who shall have examined such paper to assure that it is not in violation of the 1985 injunction hereinbefore referred to.

*United States for the Benefit of George Sassower v. Sapir,* 87 Civ. 7135 (CSH), at 3. Other federal district and circuit courts have issued similar injunctions.

Despite these orders, Sassower has been able to continue his campaign of frivolous and vexatious litigation by moving to a new forum each time such an injunction is issued. In the instant situation, Sassower was able to circumvent the order precluding the filing of lawsuits in this Court by initiating the instant lawsuits in New York State Supreme Court, Westchester County, and then waiting for the federal defendants to remove the case to federal court.

In order to prevent this type of abuse, the federal defendants have requested that this Court issue an order, pursuant to the All Writs Act, 28 U.S.C. § 1651, which would require that all suits commenced by or on behalf of Sassower against the United States, any federal agency or entity, federal judicial officer or federal official or employee, be brought *only* in the Southern District of New York, and not in any other federal or state court.[21] In other words, the injunction would preclude Sassower from filing any civil actions in any federal or state court other than this Court, and thereby would channel such suits through the United States District Court for the Southern District of New York where he must obtain leave of Court before filing an action. Several other defendants have requested that their names be added to this proposed injunction. Defendants contend that this injunction would allow a judge or magistrate in this Court to review the suits, pursuant to the *Raffe v. Doe* and *Sapir* orders, to determine if they should be accepted for filing.

The Court declines to issue an injunction which would channel all lawsuits filed by Sassower through the Southern District of New York because there are less drastic injunctive measures which can be implemented that should prevent any further abuse of the court system by Sassower. Therefore, as discussed below, the Court will issue an injunction which will allow other federal district courts to summarily dismiss lawsuits, in which Sassower is a plaintiff, that are filed in, or removed to, federal court if such lawsuits involve the subject matters enumerated in the injunction.

As the Second Circuit repeatedly has noted, "'[t]he equity power of a court to give injunctive relief against vexatious litigation is an ancient one which has been codified in the All Writs Statute.'" *Polur v. Raffe,* 912 F.2d 52, 57 (2d Cir.1990) (quoting *In re Hartford Textile Corp.,* 681 F.2d 895, 897 (2d Cir.1982) (per curiam), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983)), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991). The All Writs Act provides in pertinent part:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of

---

21. The proposed injunction provides, in relevant part:

> Mr. George Sassower is hereby enjoined from filing any civil action against the United States, any federal agency or entity, federal judicial officer, federal official or employee, in any federal or state court of the United States except the District Court of the Southern District of New York. Mr. Sassower is enjoined from filing any action in the Southern District of New York without obtaining prior leave from the Court.

their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a). The Second Circuit has emphasized that "[t]he United States Courts are not powerless to protect the public, including litigants who appear before the Courts ... from the depredations of those ... who abuse the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive ... proceedings." *In re Hartford Textile Corp.*, 659 F.2d 299, 305 (2d Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982); *see also Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir.1985) (per curiam) ("A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation.").

In determining whether relief from vexatious litigation is appropriate under the All Writs Act, "the traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant." *In re Martin–Trigona*, 737 F.2d 1254, 1262 (2d Cir.1984) (quoting *In re Hartford Textile Corp.*, 681 F.2d at 897), *cert. denied*, 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986). Instead, "[a] history of litigation entailing 'vexation, harassment and needless expense to [other parties]' and 'an unnecessary burden on the courts and their supporting personnel' is enough." *Id.* The Second Circuit has enumerated several factors which a district court should consider in determining whether a litigant's future access to the courts should be restricted:.

(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir.1986), *cert. denied*, 479 U.S. 1099, 107 S.Ct. 1323, 94 L.Ed.2d 175 (1987).

In the instant case, as described earlier, Sassower's proclivity for vexatious litigation has resulted in a wave of federal injunctions across the United States which seek to deter future suits. The Second Circuit, itself has recognized Sassower as a "vexatious litigant." *Sassower v. Sheriff of Westchester County*, 824 F.2d 184, 185 (2d Cir.1987). In that case, in rejecting Sassower's habeas corpus petition which challenged a criminal contempt conviction, the Second Circuit briefly recounted Sassower's pattern of vexatious litigation and the series of sanctions which have failed to prevent such conduct by Sassower:

Despite court orders disqualifying him from representing Raffe and enjoining him from filing Puccini-related litigation, Sassower has bombarded both the state and federal courts with numerous motions (over 300), law suits (35), and Article 78 proceedings (40) directed against the receiver and his law firm, the attorneys for other Puccini shareholders, various members of the judiciary, court appointed referees, and the New York State Attorney General.

Prior to the criminal contempt proceedings leading to this habeas corpus proceeding, Sassower had been held in criminal contempt four times and in civil contempt twice for violating state and federal orders enjoining him from filing actions related to the judicial dissolution of Puccini, and for disobeying a court order to appear at a deposition.

824 F.2d at 186 (citations omitted); *see also Sassower v. Sansverie*, 885 F.2d 9, 10 (2d Cir.1989) ("George Sassower has been an abusive litigant for a number of years, and now presents yet another in a series of lawsuits and motions continuing the long and tortured history of litigation in state and federal courts.") (quotation omitted). Since 1985, Sassower has been the subject of nu-

merous other sanctions and injunctions which also have failed to protect the courts and parties from Sassower's activities. Sassower's barrage of duplicative lawsuits over the past decade clearly has caused substantial expense to other parties and has placed an unnecessary burden on the courts and their personnel. Having reviewed the record, the Court finds that Sassower has been able to circumvent the previous injunctions issued by this Court and, therefore, such injunctions are inadequate to prevent similar abuses in the future. Under these circumstances, the Court will now frame an injunction which addresses the new judicial avenues being used by Sassower to perpetuate his vexatious litigation.

First, the injunction will apply not only to the Southern District of New York, but also will include all federal district courts. Sassower's litigation in recent years has clearly demonstrated to this Court that, when an injunction is limited to one federal district or circuit court, Sassower simply institutes an identical lawsuit in another federal forum. Therefore, the previous injunctions issued by Judge Brieant and other courts, which are limited to a particular federal forum, have been ineffective in curbing plaintiff's abuse of the federal court system across the United States. Under these circumstances, the Court finds that any injunction against Sassower must include all federal district courts. In light of Sassower's prior conduct, the Court is aware of no other sanction which would be adequate to protect the defendants and the courts.

The Second Circuit has recognized that, when a litigant has shown a pattern of abusing different district courts around the country, an injunction which applies to all federal district courts is warranted. *See In re Martin-Trigona*, 737 F.2d at 1262. In *In re Martin-Trigona*, the Second Circuit affirmed the District Court's injunction which enjoined a vexatious litigant from bringing new actions in *any* federal district court. The Second Circuit specifically addressed the precise problem faced by this Court with respect to Sassower—the vexatious litigant's use of different federal forums—and found that, under

such circumstances, an injunction applicable to all federal district courts was "necessary and proper." *Id.* The Court noted:

> The district court is part of the federal judicial system and has an obligation to protect and preserve the sound and orderly administration of justice throughout that system.... *We need not wait until a vexatious litigant inundates each federal district court with meritless actions to condition access to that court upon a demonstration of good faith.* In light of the record before us, which includes reported decisions involving Martin–Trigona in the courts of appeals of at least five circuits in recent years, such a restriction is necessary if the order of the district court is to have any effect.

*Id.* (emphasis added) (footnote omitted) (citing *In re Green*, 669 F.2d 779, 787 (D.C.Cir. 1981)). Accordingly, based upon the Second Circuit's decision in *Martin–Trigona*, the Court finds that an injunction which extends to all federal district courts is appropriate in the circumstances of the instant case based upon Sassower's practice of filing duplicative and vexatious lawsuits in different district courts throughout the federal system.

The Court notes that the injunction issued against Sassower by Judge Conner in 1985 already applies to "any federal court or tribunal." However, that injunction is limited to suits against certain individuals and entities named in that injunction. Since the issuance of that injunction almost eight years ago, Sassower has subjected numerous other individuals and entities to his vexatious lawsuits. Sassower simply adds new individuals and entities to each successive lawsuit. These individuals, in some manner, have crossed Sassower's path during his decade-long wave of duplicative litigations seeking to revive his challenge to the Puccini dissolution and receivership. Therefore, under these circumstances, the Court will not limit the new injunction to certain specified defendants. Instead, the Court will limit the scope of the injunction by confining it to lawsuits involving certain subject matters, as in the injunc-

tion approved of by the Second Circuit in *Martin–Trigona*.[22]

With respect to the Southern District of New York, the *Sapir* order continues to govern and, thus, Sassower must obtain leave of Court before any actions can be filed in this Court. This Court's injunction will add some procedures which Sassower must comply with in order to obtain authorization from the Court to file an action. However, the Court will not implement the "leave of court" procedure for other federal district courts. Those courts, if they have not already done so, may implement such a procedure if it is deemed necessary. At the very least, if Sassower files a complaint in a federal district court which violates this injunction, the complaint will be subject to summary dismissal.

██ In addition to restricting access to federal forums, the moving defendants also seek to enjoin Sassower from filing civil actions in any *state* court in the United States. The Court recognizes that, under limited circumstances, a court may issue an inter-court injunction with respect to state courts under the All Writs Act. *See, e.g., In re Baldwin–United Corp.,* 770 F.2d 328, 335 (2d Cir. 1985). However, the Court finds that extension of the injunction to state courts under the circumstances of the instant case would be an encroachment on the jurisdiction of state courts which is unwarranted.

In *In re Martin–Trigona, supra,* the Second Circuit held that the extension of an injunction, which enjoined a vexatious plaintiff from filing certain lawsuits, to include state courts was erroneous. The Second Circuit emphasized that the Court must respect the jurisdictional province of the state courts and refrain from using such injunctions in an attempt to shield state courts from these vexatious lawsuits:

[T]he protection of federal jurisdiction does not necessarily require extension of

each provision of the injunction to actions brought in state courts. It is our independence from other branches of government which is the source of our power to enjoin Martin–Trigona, but that very independence militates against extension of the terms of the injunction to state courts. Abuse of state judicial processes is not *per se* a threat to the jurisdiction of Article III courts and does not *per se* implicate other federal interests. We therefore believe that the district court erred in its blanket extension of the injunction to state courts.

737 F.2d at 1262–63.

While the Court refuses to extend the injunction in the instant case to state courts, the Court recognizes that Sassower is able to circumvent the *Sapir* order, which precludes Sassower from filing suits in this Court without leave of Court, by filing his lawsuits in New York state court with the knowledge that the federal defendants will remove the case to the Southern District of New York. However, the Court believes that there is a more limited procedure which could be implemented that would prevent Sassower from continuing civil actions brought to this Court via removal when such actions, if brought originally in this Court, would be precluded by the 1985 injunction and the *Sapir* order. The injunction will direct that, upon removal of a case in which Sassower is a plaintiff from New York state court to the Southern District of New York, Sassower will be required to obtain leave from this Court before such action can continue. More specifically, within 30 days from the date of removal, Sassower will be required to submit an "Application for Leave to Continue Action" in which, *inter alia,* Sassower must certify that the claim or claims he wishes to present are new claims never before raised and disposed of on the merits by any court. Until leave of court is obtained, the Clerk of the Court will not

---

**22.** The injunction will apply to claims with the following subject matters: (1) the Estate of Paul Kelly litigation, (2) Dennis F. Vilella, (3) the Puccini litigation, (4) claims objecting to sanctions for which ordinary review has been exhausted, or (5) claims against any state or federal judge, officer or employee for actions taken in the course of their official duties exercised in connection with Mr. Sassower's previous litigation.

The subject matter of the injunction is analogous to the order entered by the Eighth Circuit in *Sassower v. Carlson,* 930 F.2d 583, 584 (8th Cir. 1991) ("claims may not include any relating to the Puccini litigation, objecting to sanctions for which ordinary review has been exhausted, or brought against any state or federal judge, officer or employee for actions taken in the course of their official duties in connection with Sassower's prior litigation.").

accept any documents for filing and any motions or documents served on other parties will be a nullity.

The use of this procedure will protect this Court from a repeat of the current situation where a series of vexatious and duplicative lawsuits have once again reached the Southern District of New York because such lawsuits were removed from state court and arguably do not fall within the scope of the 1985 injunction or *Sapir* order. Moreover, while protecting this Court from the potential circumvention of its prior injunctions and orders, this procedure is not triggered until the action has been removed to this Court and, thus, does not in any way encroach upon the jurisdiction of state courts.[23]

The precise terms of the injunction are set forth in the Conclusion of this Opinion and Order.

## IV. RULE 11 SANCTIONS

Several defendants have requested that the Court impose sanctions against Sassower pursuant to Rule 11 of the Federal Rules of Civil Procedure. Rule 11 provides, in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. The Supreme Court has stated that "the central purpose of Rule 11 is to deter baseless filings in the district court

and ... streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990) (citation omitted).

The moving defendants argue that Rule 11 sanctions are appropriate in the instant case because Sassower's claims are barred by well-settled principles of immunity or *res judicata* or by the clear terms of prior injunctions. The Second Circuit has noted that "Rule 11 has no retrospective application to a complaint filed in state court even if the action subsequently is removed to federal court."[24] *Mareno v. Jet Aviation of Am., Inc.,* 970 F.2d 1126, 1128 (2d Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993). Since these complaints were filed in state court, Rule 11 sanctions cannot be imposed on Sassower on the basis of these complaints. However, if the Court were so inclined, sanctions would be appropriate under Rule 11 based upon the wave of frivolous and vexatious motions which Sassower has filed since the removal of these cases to this Court. *See Mareno,* 970 F.2d at 1128 ("Rule 11 may apply to papers filed in the federal forum once the action has been removed"). Moreover, the Court also could sanction Sassower for his vexatious litigation pursuant to the Court's inherent authority. It is well settled that "a district court has inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *See Sassower v. Field,* 973 F.2d at 80–81 (citing *Chambers v. NASCO, Inc.,* — U.S. —, —, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991)). The Court's inherent power to sanction "stems from the very nature of the courts and their need to be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *United States v. International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of*

---

23. The Court recognizes that federal district courts, other than the Southern District of New York, also need to prevent circumvention of the injunction via removed actions from state court. While the Court will not implement the "leave of court" procedure for other district courts, the Court will include removed state court actions within the scope of the injunction for these federal district courts. Thus, if a removed action falls within the scope of the injunction, it will be subject to summary dismissal.

24. The Court also notes that "when a court awards defendants attorney's fees, it must take into account the financial circumstances of the plaintiff." *Sassower v. Field,* 973 F.2d 75, 81 (2d Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993).

*Am., AFL–CIO,* 948 F.2d 1338, 1345 (2d Cir. 1991) (quoting *Chambers v. NASCO, Inc.,* —— U.S. at ——, 111 S.Ct. at 2132 (quotation omitted)); *see also Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, ——, 8 L.Ed.2d 734 (1962).

While the Court clearly has the power to sanction Sassower in the instant actions under Rule 11 and the Court's inherent power, the Court declines to do so. A review of sanctions imposed against Sassower by numerous courts in the past demonstrates that such sanctions would be ineffective in deterring Sassower from filing these frivolous actions. *See Sassower v. Sansverie,* 885 F.2d at 11 (district court considered criminal and civil contempt and Rule 11 sanctions, but determined that such sanctions would be ineffective). The imposition of such sanctions would simply trigger more appeals, motions and collateral lawsuits by Sassower in an attempt to challenge such sanctions and continue his parade of vexatious litigation. Instead, as discussed earlier, the Court believes that the appropriate sanction is the issuance of a more stringent injunction which further restricts Sassower's ability to abuse the federal court system by filing duplicative lawsuits in the future. Accordingly, the motions for Rule 11 sanctions, or other sanctions such as civil or criminal contempt, are denied.

## CONCLUSION

For the reasons stated above, the various complaints contained in this consolidated action are dismissed in their entirety. Plaintiff's motions are denied in their entirety. Defendants' motions for sanctions are denied. The defendants' motion for an injunction is granted, with the modifications set forth below.

The Court hereby issues the following permanent injunction as to George Sassower:

**(1)** *ACTIONS FILED IN THE SOUTHERN DISTRICT OF NEW YORK*— George Sassower is hereby enjoined from filing any civil action in the United States District Court for the Southern District of New York without first obtaining prior leave from the Court. In seeking leave to file, Sassower must certify that the claim or claims he wishes to present are new claims never before raised and disposed of on the merits by any court. The action may not relate to or arise from (1) the Estate of Paul Kelly litigation, (2) Dennis F. Vilella, (3) the Puccini litigation, (4) claims objecting to sanctions for which ordinary review has been exhausted, or (5) claims against any state or federal judge, officer or employee for actions taken in the course of their official duties exercised in connection with Mr. Sassower's previous litigation. He must also certify that the claim or claims are not frivolous, malicious, or taken in bad faith. The motion for leave must be captioned "Application Pursuant to Court Order Seeking Leave to File" and Sassower must cite or affix a copy of this Opinion and Order to that motion. Failure to comply strictly with these requirements will be sufficient grounds for summarily denying leave to file. Until leave from the Court is obtained, any document or motion served by Sassower is a nullity and no party need file a response thereto.

The Clerk of the Court is hereby ordered not to accept for filing any paper or proceeding or motion or new case of any kind presented by George Sassower, or naming him as a party plaintiff or petitioner, without the leave in writing first obtained from a judge or magistrate of this Court.

**(2)** *ACTIONS REMOVED FROM STATE COURT TO THE SOUTHERN DISTRICT OF NEW YORK*—If any civil action in which Sassower is a plaintiff is removed to the United States District Court for the Southern District of New York from state court, pursuant to 28 U.S.C. §§ 1441, 1442, 1442a, 1443, or 1444, Sassower is required to obtain leave from the Court to continue the action. Sassower must file, within 30 days from the date of removal, an "Application for Leave of Court to Continue Action." Such Application must comply with *all* of the requirements enumerated in Paragraph One of this injunction. Failure to comply strictly with these requirements will be sufficient grounds for summarily denying leave to continue the action. Until leave from the Court is obtained, any document or motion

served by Sassower is a nullity and no party need file a response thereto.

Until leave to continue the action is obtained, the action is stayed and the Clerk of the Court should not accept for filing any paper or motion in the removed action, other than the Notice of Removal and the Application for Leave to Continue Action.

(3) *ACTIONS FILED IN, OR REMOVED TO, FEDERAL DISTRICT COURTS OTHER THAN THE SOUTHERN DISTRICT OF NEW YORK*—Sassower is enjoined from filing any civil action in any federal district court which relates to or arises from (1) the Estate of Paul Kelly litigation, (2) Dennis F. Vilella, (3) the Puccini litigation, (4) claims objecting to sanctions for which ordinary review has been exhausted, or (5) claims against any state or federal judge, officer or employee for actions taken in the course of their official duties exercised in connection with Sassower's previous litigation. Sassower is required to annex a copy of this Opinion and Order to any pleading filed in a civil action in any federal court. Failure to comply with the terms of this injunction may be considered by such federal court to be a sufficient defense to sustain a motion to dismiss such a lawsuit and may result in summary dismissal.

This injunction also applies to an action in which Sassower is a plaintiff that is removed to federal court from state court pursuant to 28 U.S.C. §§ 1441, 1442, 1442a, 1443, or 1444. If the removed action falls within the scope of the subject matter of this injunction, it will be subject to summary dismissal.

(4) This injunction does not, in any way, abrogate any past or future injunctions directed at George Sassower, but rather supplements such injunctions.

**SO ORDERED**