**Allan and Donna BONNEY, Plaintiffs**

v.

**WASHINGTON MUTUAL BANK, as Successor in Interest to Long Beach Mortgage Company, Defendant.**

**C.A. No. 08–30087–MAP.**

United States District Court, D. Massachusetts.

Feb. 9, 2009.

Thomas J. Enright, Partridge, Snow & Hahn LLP, Providence, RI, for Defendant.

Christopher M. Lefebvre, Pawtucket, RI, for Plaintiffs.

*MEMORANDUM AND ORDER RE: REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANT'S MOTION TO DISMISS (Dkt. Nos. 3 & 10)*

PONSOR, District Judge.

## I. INTRODUCTION

This is an action pursuant to the Truth in Lending Act, 15 U.S.C. § 1601(a) ("TILA"), in which Plaintiffs challenge the legal sufficiency of the Notice of Right to Cancel provided to Plaintiffs in connection with their home loan transactions. Defendant filed a Motion to Dismiss, which was referred to Chief Magistrate Judge Kenneth P. Neiman for report and recommendation.

On July 30, 2008, Judge Neiman issued his Report and Recommendation, to the effect that Defendant's motion should be denied. Defendant thereafter filed timely objections. For the reasons set forth below, this court will decline to adopt the Report and Recommendation and will allow Defendant's Motion to Dismiss.

## II. BACKGROUND

The essential facts are simple and undisputed. On or about May 13, 2005, Plaintiffs obtained a loan from Defendant's predecessor in interest, Long Beach Mortgage Company ("Long Beach"), secured by their residence, for the purpose of debt consolidation. Plaintiffs received a Notice of Right to Cancel in connection with the transaction that did not specify the date of the transaction or the date the recision period expired. Nearly three years later,

on or about March 20, 2008, Plaintiffs sent Defendant a recision request based upon the allegedly deficient Notice of Right to Cancel. Defendant declined to rescind the loan, and in April 2008, Plaintiffs filed this complaint seeking a recision of the loan, a refund of all monies paid to Long Beach in connection with the loan, statutory damages, and attorneys' fees and costs.

■ The wealth of authority in this Circuit and District makes lengthy discussion of the issues raised by this case unnecessary. The First Circuit in *Palmer v. Champion Mortgage*, 465 F.3d 24 (1st Cir. 2006), and the District of Massachusetts in *Carye v. Long Beach Mortgage Co.*, 470 F.Supp.2d 3 (D.Mass.2007), addressed factual scenarios very similar to this one. In *Palmer* and *Carye*, the First Circuit and Judge William G. Young found that purely technical violations of TILA, in circumstances where the notice was in fact quite clear, could not provide the foundation for a statutory claim. This court has adopted the logic of the two decisions in *Megitt v. Indymac Bank, F.S.B.*, 547 F.Supp.2d 56 (D.Mass.2008).

The Magistrate Judge here distinguished *Palmer* and *Megitt*, and disagreed with *Carye*, because the notice in this case omitted the transaction date. This precise issue has been addressed by Judge F. Dennis Saylor IV in two recent decisions, *Quiles v. Washington Mutual Bank*, C.A. 08–40039, 2008 WL 5650852 (D.Mass. Dec. 30, 2008), and *Omar v. Washington Mutual Bank*, C.A. 08–40044, 2008 WL 5650851 (D.Mass. Dec. 30, 2008).[1] In both these decisions, Judge Saylor agreed with Judge Young's logic in the *Carye* decision and ordered dismissal despite the absence of the transaction date in the Notice of Right to Cancel form.[2] This court agrees with Judge Saylor that the omission of a transaction date from the form "would not be confusing to an average borrower, whether considered alone or in conjunction with the other omission." *Quiles v. Washington Mutual Bank*, Slip op. at 9, citing *Megitt*. An identical result was reached in *McMillian v. AMC Mortgage Services, Inc.*, 560 F.Supp.2d 1210 (S.D.Ala.2008).

■ Counsel for Plaintiffs condemns the state of Massachusetts law in this area as being "in a state of total chaos." *See* Dkt. 12 at 1. This court must disagree. The law in this district is consistent that merely technical violations of TILA that would not confuse a reasonably alert buyer cannot form the basis for a cause of action. There is no persuasive reason to treat the scenario presented in this case any differently.

## III. *CONCLUSION*

Based upon the foregoing, the court declines to adopt the Report and Recommendation of July 30, 2008 (Dkt. No. 10), and hereby ALLOWS Defendant's Motion to Dismiss (Dkt. No. 3). The clerk is ordered to enter judgment for Defendant. This case may now be closed.

It is So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANT'S MOTION TO DISMISS (Document No. 3)*

July 30, 2008

NEIMAN, United States Chief Magistrate Judge.

This action involves the legal sufficiency of the Notice of Right to Cancel ("Notice") that Washington Mutual Bank ("WaMu" or "Defendant"), as successor in interest to

---

1. These two decisions came down after the Report and Recommendation.

2. Significantly, counsel in this case are the same as in *Quiles* and *Omar*.

Long Beach Mortgage Company ("Long Beach"), provided to Allan and Donna Bonney (together "Plaintiffs") in connection with their home loan transaction. The basis of Plaintiffs' claims is that Defendant failed to properly notify them when their three-day cancellation period expired. Defendant has moved to dismiss Plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6) and the motion has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the court will recommend that Defendant's motion to dismiss be denied.

## I. BACKGROUND

The following allegations come from Plaintiffs' complaint and the Notice annexed thereto. *See Palmer v. Champion Mortg.,* 465 F.3d 24, 28 (1st Cir.2006) (citing cases). The court has accepted all well-pleaded facts as true and has given Plaintiffs, the parties who pursue the contested claims, the benefit of all reasonable inferences. *See id.* (citations omitted).

On or about May 13, 2005, Plaintiffs obtained a loan from Long Beach, secured by their residence, for debt consolidation purposes. (Complaint ¶ 7.) In connection with the loan transaction, Plaintiffs received a copy of the Notice which, purportedly, disclosed the manner and method by which they were entitled to cancel the transaction. (*Id.* ¶ 11, Exh. A.) Alleging that the Notice was deficient, Plaintiffs, on or about March 20, 2008, sent WaMu (Long Beach's successor), a request seeking rescission of the loan. (*Id.* ¶ 12.)

The Notice provided Plaintiffs tracked the model form for such disclosures. In relevant part, the Notice, like the model form, informed Plaintiffs as follows:

You have a legal right under federal law to cancel this transaction, without cost, within **THREE BUSINESS DAYS** from whichever of the following events occurs last:

(1) the date of the transaction, which is _____; or

(2) the date you received your Truth in Lending disclosures; or

(3) the date you received this notice of your right to cancel.

(*Id.,* Exh. A.) The Notice further provided: "If you cancel by mail or telegram, you must send notice no later than MIDNIGHT of _____ (or MIDNIGHT of the **THIRD BUSINESS DAY** following the latest of the three events listed above.)" (*Id.*) As indicated, no date was inserted in either the first blank space (hereinafter the "transaction date") or the second blank space (hereinafter the "rescission deadline"). (See *id.*)

Plaintiffs allege that, because Defendant failed to insert both a specific transaction date and a rescission deadline, Defendant's Notice violated the federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), the implementing Federal Reserve Board Regulation Z, 12 C.F.R. § 226.1, *et seq.* ("Regulation Z"), and TILA's Massachusetts counterpart. (See *id.* ¶ 16.) In due course, Defendant filed a motion to dismiss, Plaintiffs tendered an opposition, Defendant filed a reply brief, and Plaintiffs submitted supplemental authority.[3]

## II. STANDARD OF REVIEW

A complaint should be dismissed pursuant to Rule 12(b)(6) only if it "fails to set forth factual allegations, either direct or inferential, respecting each material ele-

---

**3.** Plaintiffs note in their opposition that Defendant has filed parallel motions to dismiss in two similar cases pending before District Judge F. Dennis Saylor, IV, *Quiles v. Wash-* *ington Mut. Bank,* Civil Action No. 08–40039–FDS, and *Omar v. Washington Mut. Bank,* Civil Action No. 08–40044–FDS.

ment necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (citations and internal quotation marks omitted). The court must accept a complaint's well-pleaded facts as true and indulge all reasonable inferences in the plaintiff's favor. *Cook v. Gates*, 528 F.3d 42, 48 (1st Cir.2008) (citation omitted). In the end, "[i]n order to survive a motion to dismiss, the complaint must allege a plausible entitlement to relief." *Chmielinski v. Mass. Office Comm'r Probation*, 513 F.3d 309, 314 (1 st Cir.2008) (citing, *inter alia, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007)) (internal quotation marks omitted).

## III. DISCUSSION

Relying primarily on District Judge Michael A. Ponsor's recent decision in *Megitt v. Indymac Bank*, 547 F.Supp.2d 56 (D.Mass.2008), which adopted the undersigned's report and recommendation of dismissal, as well as District Judge William G. Young's decision in *Carye v. Long Beach Mortg. Co.*, 470 F.Supp.2d 3 (D.Mass.2007), Defendant asserts that the "technical" omissions of which Plaintiffs complain—the blank transaction date and rescission deadline—do not constitute actionable claims. For the reasons which follow, this court disagrees. In sum, the court not only finds the instant case to be distinguishable from *Megitt* (as well as *Palmer*, the First Circuit decision upon which *Megitt* principally relied) but also respectfully disagrees with the conclusions reached in *Carye*. Accordingly, the court recommends that Plaintiffs' complaint not be dismissed.

It is unnecessary to re-plow the legal terrain described in *Megitt*. *See id.*, 547 F.Supp.2d at 58–59 (citing extensively from *Palmer* ). Suffice it to say that here, as in both *Megitt* and *Palmer*, "the question is whether Defendant clearly disclosed Plaintiffs' rescission rights." *See id.* at 59 (citing *Palmer*, 465 F.3d at 27). "If so, Plaintiffs may well be entitled to an extended, three-year rescission period and, in turn, the right to pursue this lawsuit for additional relief. If not, Plaintiffs' action must be dismissed, as occurred in *Palmer*." *Id.* (citations omitted).

To answer the question, the court, as described in *Megitt*, must take into account three salient points made by the First Circuit in *Palmer*:

> First, the [First Circuit] noted that, in the TILA context, reviewing courts should "focus[ ] the lens of [their] inquiry on the text of the disclosures themselves rather than on plaintiffs' descriptions of their subjective understandings." *Id.* at 28 (citations omitted). Second, the court explained that "[t]his emphasis on objective reasonableness, rather than subjective understanding, is also appropriate in light of the sound tenet that courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer—a consumer who is neither particularly sophisticated nor particularly dense." *Id.* (citing cases). Third, the court directed that "the fact that the language of the Notice closely tracks the language of the model form," was, "at the very least, prima facie evidence of the adequacy of the disclosure." *Id.* at 29 (citing 12 C.F.R. § 226 Supp. I, Intro. ¶ 1).[4]

---

**4.** The First Circuit went so far as to recognize that there was both statutory and case law support for the proposition that adherence to a model form bars a TILA non-disclosure claim entirely. *Id.* at 29 n. 5 (citing 15 U.S.C.

§ 1604(b), 1635(h), 1640(f); *Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 283, 286 (7th Cir.1997); *Murphy v. Empire of Am.*, 583 F.Supp. 1563, 1566 (W.D.N.Y.1984)). Since the case before the First Circuit did not re-

*Megitt,* 547 F.Supp.2d at 59 (footnote in original).

Before proceeding further, the court wishes to note the following differences amongst the Notices of Rescission in the cases at play in this District. In *Palmer,* the Notice provided a specific deadline for rescission (April 1, 2003) but was not received by the plaintiff there until well after that date; the First Circuit upheld the district court's dismissal of the plaintiff's complaint. *Id.,* 465 F.3d at 26–27. In *Megitt,* the Notice included the date of the transaction but left blank the rescission deadline; this court recommended and Judge Ponsor agreed that, although the facts were different than those in *Palmer,* the plaintiff's complaint would be dismissed. *Megitt,* 547 F.Supp.2d at 59–60. In *Carye,* both the transaction date and the rescission deadline were left blank in the Notice; as indicated, the court there dismissed the plaintiff's complaint. *Carye,* 470 F.Supp.2d at 9. The present case, like *Carye,* involves a Notice with both a blank transaction date and a blank rescission deadline.

Given these dismissals, why, then, is this court prepared to recommend that Plaintiffs' complaint survive here, particularly when in *Megitt*—where the lender also left the plaintiffs' rescission deadline blank— the court recommended that the complaint be dismissed? The answer lies in the fact that, unlike *Megitt,* the Notice presently at issue left blank the transaction date as well and, *Carye*'s analysis to the contrary, that distinction, this court believes, makes all the difference.

To review, this court in *Megitt* concluded that the Notice there was "objectively reasonable as a matter of law." *Id.* at 60. "First and foremost," the court stated, "each Notice 'clearly and conspicuously in-

dicate[d] that the debtor can rescind "within three (3) business days from whichever of [three enumerated] events occurs last." ' " *Id.* (quoting *Palmer,* 465 F.3d at 28). "True," the court continued, "each Notice had left blank the date by which rescission could occur, *i.e.,* 'no later than midnight of _____.' " *Id.* But, the court nonetheless believed that the *Megitt* plaintiffs were "attempt[ing] to 'wrest[ ] this statement from its contextual moorings,' that is, they overlook[ed] the fact that '[t]he statement is followed immediately by a parenthetical reading "(or midnight of the third business day following the latest of the three … events listed above)." ' " *Id.* (quoting *Palmer,* 465 F.3d at 28–29). Again, the three events were the date of the transaction (for which a space was provided to be completed), the date on which the Truth in Lending disclosure was received, and the date the consumer received the Notice of the right to cancel; the most important of these three events, the transaction date, was included in the *Megitt* Notice. Accordingly, like the First Circuit in *Palmer,* this court " 'fail[ed] to see how any reasonably alert person—that is, the average consumer— reading the Notice would be drawn to the [blank rescission] deadline without also grasping the twice-repeated alternative deadlines.' " *Id.* (quoting *Palmer,* 465 F.3d at 29). Accordingly, the court concluded that, as in *Palmer,* the Notice in *Megitt* was " 'crystal clear and, thus, did not trigger an extended rescission right under the TILA.' " *Id.* (quoting *Palmer,* 465 F.3d at 29). As described, Judge Ponsor adopted the court's reasoning and dismissed the case. *See id.* at 57.

The instant case is significantly different and, in this regard, the court wishes to

quire the court to address the argument, it left "for another day the question of whether such

adherence invariably brings a creditor within a safe harbor." *Id.*

make four points. First, as indicated, the instant Notice, unlike the one in *Megitt*, omitted both the rescission deadline *and* the transaction date. Accordingly, Plaintiffs, unlike their counterparts in *Megitt*, had no firm transaction date (the first listed event) from which to count "business days." True, as Defendant points out, Plaintiffs may well have been in a position to know the date of the transaction. (See Def.'s Mem. Law in Support of Motion Dismiss at 5.) There are no facts pled, however, which would establish the omitted transaction date as a matter of law; at best, the complaint asserts that Plaintiffs' mortgage loan was obtained "[o]n or about" May 13, 2005. (See Complaint ¶ 10.) [5]

Second, the court does not believe that the First Circuit would excuse, as a matter of law, the *double* violation that occurred here, *i.e.*, the omission of both the rescission deadline and the transaction date. Granted, the First Circuit has long believed "that TILA was 'intended by Congress to provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations' ... [and] eschewed a rule of 'hyper-technicality' which appears to have guided ... courts in [other] jurisdictions." *Megitt*, 547 F.Supp.2d at 61 (quoting *Santos–Rodriguez v. Doral Mortg. Corp.*, 485 F.3d 12, 17 (1st Cir.2007)). *See also McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 424 (1st Cir.2007) (noting that Congress has made it "manifest that ... it had not intended that lenders would be made to face overwhelming liability for relatively minor violations"); *McKenna v. First Horizon Home Loan Corp.*, 537 F.Supp.2d

284, 290 (D.Mass.2008) (concluding on remand that reliance on rescission case law from other jurisdictions which follow a "stricter, zero-tolerance approach ... is misplaced because the First Circuit [has] declined to follow the hyper-technical approach of these circuits"). But, as far as this court understands, no double violation of TILA has ever been presented to the First Circuit. That being so, the court finds it hard to believe that, at this stage of litigation, the First Circuit would accept as appropriate under TILA what is, in effect, a blank rescission form. *Cf. Barnes v. Fleet Nat'l Bank*, 370 F.3d 164, 174 (1st Cir.2004) ("a misleading disclosure is as much a violation of TILA as a failure to disclose at all").

To be more precise, what is striking about the instant Notice is the fact that, other than including identifying information about the borrowers and the name and address of the mortgage company, it is void of any articulated measuring date. This would appear to fly in the face of lenders' TILA obligations. TILA, it must be remembered, was enacted " 'to assure meaningful disclosure of credit terms' and 'to protect the consumer against inaccurate and unfair credit practices.' " *Palmer*, 465 F.3d at 27 (quoting 15 U.S.C. § 1601(a)). If anything, TILA was intended "to balance scales thought to be weighed in favor of lenders and is thus to be liberally construed in favor of borrowers." *Bizier v. Globe Fin. Servs., Inc.*, 654 F.2d 1, 2 (1st Cir.1981). *See also Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998) (holding that TILA "requires creditors to provide borrowers

---

**5.** To be sure, Plaintiffs might arguably have been able to calculate business days from "[t]he date [they] received [their] Truth in Lending disclosures" (the second listed event) or from "[t]he date [they] received this notice of [their] right to cancel" (the third listed

event). (See Complaint, Exh. A.) But again, no specific dates have been provided to the court with regard to those events. Moreover, the facts surrounding these events may prove critical to the court's further consideration of Plaintiffs' claims.

with clear and accurate disclosures of terms").

Third, the court respectfully disagrees with Judge Young's decision in *Carye* which, as described, presented virtually the same fact pattern as here. *See Carye,* 470 F.Supp.2d at 9. Granted, this court cited *Carye* in its report and recommendation in *Megitt,* but it noted that the situation in *Carye* was arguably more "confusing" to the average consumer because, unlike the situation in *Megitt,* the notice there omitted *both* the rescission deadline and the transaction date. *Id.,* 547 F.Supp.2d at 60–61. That, as described, is the situation at hand. Similarly, this court in *Megitt* distinguished at least two other decisions relied upon by the plaintiffs because the Notices in those cases were deficient in "ways additional to the mere omission of the rescission deadline." *Id.* at 61. *See Reynolds v. D & N Bank,* 792 F.Supp. 1035, 1037–38 (E.D.Mich. 1992) (notice was deficient in several ways, one of which was omission of rescission deadline); *Johnson v. Thomas,* 342 Ill.App.3d 382, 276 Ill.Dec. 669, 794 N.E.2d 919, 930 (2003) (similar).

The court, of course, would be remiss in failing to acknowledge that Judge Ponsor, in his Memorandum and Order adopting its recommendation in *Megitt,* stated that "Judge Young's *Carye* decision sensibly applies *Palmer* to precisely the facts underlying this case." *Megitt,* 547 F.Supp.2d at 57. Notwithstanding that description, this court does not believe that *Carye,* or *Palmer* for that matter, applied "precisely" to the facts in *Megitt* or, for the reasons stated, should control here. *See In re Armstrong,* 288 B.R. 404, 414 (E.D.Pa. 2003) (holding that notices which "lack the date of the transaction *and* the corollary deadline to rescind" are "a clear violation of [TILA]") (emphasis added).

Fourth, the court ends its analysis where it began, *i.e.,* the Rule 12(b)(6) posture of the instant litigation. As noted, the First Circuit in *Palmer* cautioned district courts to focus on the "objective reasonableness" of a TILA disclosure. *See id.,* 465 F.3d at 28. Granted, that phrase may well be construed on a motion to dismiss as a matter of law, as it was in *Palmer* and, indeed, *Megitt. See also Aubin v. Residential Funding Co.,* 565 F.Supp.2d 392, 394 (D.Conn.2008) ("[I]n TILA cases, 'where the sole issue is whether required disclosures have been made clearly and conspicuously, or whether additional disclosures confuse or mislead, the court may appropriately decide the plaintiff's claims as raising issues of law'") (quoting *Gambardella v. G. Fox & Co.,* 716 F.2d 104, 113 (2d Cir.1983)). Still, courts often tread cautiously at the nascent dismissal stage of a case, particularly when terms such as "objective reasonableness" are at play and when critical facts are still unknown. *See, e.g., id.,* 565 F.Supp.2d at 398–99 (denying lender's motion to dismiss in TILA disclosure case). *See also Aiken v. Nixon,* 236 F.Supp.2d 211, 238 n. 23 (N.D.N.Y.2002) (observing in Fourth Amendment case that "the question of objective reasonableness is generally not susceptible to resolution on a Rule 12(b)(6) motion"); *Sassower v. Abrams,* 833 F.Supp. 253, 263 n. 16 (S.D.N.Y.1993) ("qualified immunity is measured by a standard of objective reasonableness, and therefore cannot ordinarily support dismissal under Fed.R.Civ.P. 12(b)(6)") (citing *Liffiton v. Keuker,* 850 F.2d 73, 76 (2d Cir.1988)); *Miller v. Knepper & Moga, P.C.,* 1999 WL 977079, at *4 (N.D.Ill. Oct. 22, 1999) (noting, in debt collection cases that "[t]he objective reasonableness of [the consumer's] belief should not be decided on a Rule 12(b)(6) motion to dismiss"). The court suggests that this is just such a case.

One final point: given the supplemental authority provided by Plaintiffs, the court must acknowledge that counting "business days" under TILA might not be as easy as it assumed in *Megitt*. As District Judge Mark R. Kravitz recently explained in *Aubin*,

> while the [model] Rescission Notice refers to "business days," it never defines "business day" or tells the consumer when to begin counting business days or how to count them. Indeed, it would likely surprise the average person (it certainly surprised this judge) to learn that "Saturday" is included within TILA's definition of a "business day." For Regulation Z states that,
>
>> for purposes of rescission under §§ 226.15 and 226.23, and for purposes of § 226.31, [business day] means all calendar days except Sundays and the legal public holidays specified in 5 U.S.C. 6103(a), such as New Year's Day, the Birthday of Martin Luther King, Jr., Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, and Christmas Day.
>
> 12 C.F.R. § 226.2(a)(6).
>
> It seems apparent to this Court that the average consumer would believe that "business days" are confined to "Monday through Friday." *See* Wikipedia, http://en.wikipedia.org/wiki/Business_day ("In the Western world, Saturdays and Sundays are not counted as business/working days."); *see also Black's Law Dictionary* 402 (7th ed. 1999) (defining "business day" as "A day that most institutions are open for business. A day on which banks and major stock

exchanges are open, excluding Saturdays and Sundays.").

*Id.*, 565 F.Supp.2d at 397–99 (footnote omitted).

Judge Kravitz's point is well made and well taken. Indeed, had this argument been presented in *Megitt*, this court might have paused a bit more before making the recommendation it did. Nevertheless, the debtors in *Megitt* did receive a notice which, by including the transaction date, could enable them to make the necessary calculation even in "business days." *But see Williamson v. Lafferty*, 698 F.2d 767, 769 n. 3 (5th Cir.1983) (rejecting defendant's argument that the plaintiff "could have calculated the expiration period herself because the date of the transaction was provided" insofar as "the precise purpose of requiring the creditor to fill in the [expiration] date is to prevent the customer from having to calculate three business days"). Here, in contrast, Plaintiffs had neither a transaction date nor a rescission deadline by which to reasonably measure their rights and obligations.

### III. CONCLUSION

The instant TILA notice, unlike the ones at issue in *Palmer* and *Megitt*, is essentially a blank model form void of any measuring dates. This court, for one, is not prepared to state from the facts given that such a defective notice is "objectively reasonable" as a matter of law. Accordingly, for the reasons stated, the court recommends that Defendant's motion to dismiss be DENIED.[6]

---

6. The parties are advised that under the provisions of Rule 3(b) of the Rules for United

States Magistrate Judges in the United States District Court for the District of Massachu-

setts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.